JOHN W. HOWARD  (SBN 80200)
SCOTT J. STREET (SBN 258962)
**JW Howard │ Attorneys, Ltd.**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel: 619-234-2842; Fax 619-234-1716
Email:  Johnh@jwhowardattorneys.com
        Sstreet@jwhowardattorneys.com


NICHOLAS R. BARRY (TN Bar No. 031963)
(*pro hac vice*)
IAN PRIOR (MA Bar No. 655704)
(*pro hac vice*)
**America First Legal Foundation**
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Email: nicholas.barry@aflegal.org
       ian.prior@aflegal.org

Attorneys for Plaintiff, Brian Beneker

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN BENEKER,<br><br>            Plaintiff<br><br>v.<br><br>CBS STUDIOS, INC., a Delaware Corporation, CBS ENTERTAINMENT GROUP, LLC, a California limited liability company, and PARAMOUNT GLOBAL, a Delaware Corporation, | Case No.:  2:24-cv-01659-JFW-SSC<br><br>**PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS** |

TABLES OF CONTENTS

I.    INTRODUCTION……………………………………………….....5

II.   STANDARD OF REVIEW…………………………………….…..6

III.  THE FIRST AMENDMENT DOES NOT PER SE INSULATE
      ENTERTAINMENT CORPORATIONS FROM LIABILITY FOR
      DISCRIMINATION ON THE BASIS OF RACE, SEX OR SEXUAL
      ORIENTATION.…………………………………………………7

IV.   DEFENDANTS SEEK TO EXPAND THE RIGHT TO DISCRIMINATE
      ON THE BASIS OF RACE OR SEXUAL ORIENTATION WHEN THAT
      STATUS IMPINGES ON AN ORGANIZATION'S EXPRESSIVE
      MESSAGE, TO A GENERALIZED RIGHT TO DISCRIMINATE ON
      THE BASIS OF STATUS ALONE.………………………………12

V.    *AMERICAN ALLIANCE FOR EQUAL RIGHTS V FEARLESS FUND*
      *MANAGEMENT, ET. AL.*, IS INSTRUCTIVE.…………………….14

VI.   THE 1981 CLAIMS DEFENDANT SEEKS TO DISMISS ARE NOT
      BARRED BY THE STATUTE OF LIMITATIONS……………….…..16

VII.  CONCLUSION.………………………………………………19

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                  Page(s)

*American Alliance for Equal Rights v. Fearless Fund Management, LLC*,

    103 F.4th 765 (11th Cir. 2024)……………………………………….…14-16

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009)……………………………………………………….6

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007)……………………………………………………….7

*Boy Scouts of America v. Dale*,

    530 U.S. 640 (2000)……………………………………………………….8

*Christian Legal Soc. v. Walker*,

    453 F.3d 853, 863 (7th. Cir 2006)………………………………………10

*303 Creative LLC v. Elenis*,

    600 U.S. 570 (2023)……………………………………………………...12

*Directv, Inc. v. Treesh*,

    487 F.3d 471 (6th Cir.2007)……………………………………………….7

*Green v. Miss United States of America*,

    52 F.4[th] 773 (9th Cir. 2022)…………………………………………..8-10

*Hexcel Corp. v. Ineos Polymers, Inc.*,

    681 F.3d 1055 (9th Cir.2012)……………………………………………17

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,

    515 U.S. 557 (1995)……………………………………………….....8, 11

*Inge v. Rock Fin. Corp.*,

    281 F.3d 613 (6th Cir.2002)……………………………………………….7

*Knievel v. ESPN*, 393 F.3d 1068

    (9th Cir. 2005)……………………………………………………………..7

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

*Leland v. City and County of San Francisco*,

    576 F.Supp.2d 1079 (N.D. Cal. 2008)……………………………………………17

*Lopez v. Smith*,

    203 F.3d 1122 (9th Cir. 2000)……………………………………………….....7

*Lukovsky v. City & Cnty. of San Francisco*,

    535 F.3d 1044 (9th Cir. 2008)………………………………………….…......18

*McDermott v. Ampersand Publishing, LLC*

    593 F.3d 950 (9th Cir. 2010)……………………………………….…...13, 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008)……………………………………………….7

*Moore v. Hadestown Broadway, LLC*,

    2024 WL 989843 (2024)………………………………………………….....11

*National R.R. Passenger Corp. v. Morgan*,

    536 U.S. 101 (2002)…………………………………………………17, 18

*Nelson v. McClatchy Newspapers, Inc.*,

    131 Wash. 2d 523 (1997)…………………………………………….…..14

*Telescope Media Grp. v. Lucero*,

    936 F.3d 740 (8th. Cir. 2019)……………………………………………10

*U.S. v. Ritchie*,

    *342 F.3d 903 (9th Cir. 2003)*……………………………………………8, 10


*CODES*
*42 U.S.C. §1981*…………………………………………………...15-17

*RULES*
*Fed. Rules of Civ. Pro. 12*……………………………………………..6, 8

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

4

1

## I.  <u>INTRODUCTION</u>

2  In the instant motion to dismiss, Defendants press the novel proposition that the

3  First Amendment insulates corporations from liability for racial, sex and gender

4  discrimination in their hiring practices.  That is a misrepresentation of First Amendment

5  jurisprudence currently fashionable among entertainment companies; deployed by

6  would-be racial discriminators and worthy of the pretextual exclusion of black

7  Americans in the Jim Crow South by segregationists.

8  Defendants posit that they are engaged in an expressive enterprise and that they

9  can, therefore, per se, discriminate at will against people on the basis of race and sex

10  because hiring disapproved individuals will interfere with their "expressive conduct."

11  How it would interfere, of course, they do not say.  They do not even indicate what

12  point of view they are expressing, the expression of which would be interfered with by

13  the hiring of a member of a disapproved racial group.  They leave aside the irony that

14  the position they press on this Court could easily be flipped, if accepted by this Court,

15  against those individuals they seek to promote for purposes of a diverse workforce.

16  The motion is a splendid exercise in misinterpretation, misrepresentation,

17  misdirection and conflation.  While accurately presenting volumes of inarguable First

18  Amendment jurisprudence, they mischaracterize its meaning and effect.  They

19  repeatedly conflate their business policy with expressive conduct.  Their business policy

20  of creating a diverse workforce has nothing to do with their expressive conduct.  And

21  there is the rub.  They also conflate a right to discriminate when status impinges on

22  protected speech with generalized discrimination on the basis of status alone, that does

23  not.  They misrepresent law that allows discrimination against *viewpoint*, as law that

24  permits discrimination against *people* on the basis of race and sex, and absent the

25  victim's expression of a viewpoint at odds with that of the employer.  They do this

26  without pausing to differentiate between business policy and practice and expressive

27  conduct.

28

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

And that is the crux of Defendants' problem. It is also why this motion is not well taken. A business practice that discriminates on the basis of a suspect classification for hiring purposes, is independent of the expressive conduct that may be a company's core business. None of the cases cited by Defendants holds otherwise. Defendants have misrepresented the cases holding that organizations can discriminate against people if those people represent a point of view at odds or inconsistent with the message of the organization, as standing for the proposition that any organization that is engaged in expressive conduct can discriminate against individuals on the basis of race, sex or gender, regardless of whether or not the individual represents a point of view that is inconsistent with that of the organization. They are wrong.

Defendants' failure to distinguish between discrimination that specifically impinges on a particular point of view or expressive conduct, and the business practice of racial or sex discrimination having nothing to do with that expressive conduct, is fatal to its motion. This issue has been conclusively disposed of by the most recent authority addressing the topic, *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024), decided a month ago in an opinion that *does* recognize the distinction, is the only case that applies to the specific facts of the instant case, and represents the latest expression of applicable law. Accordingly, this motion must be denied.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This is a low standard. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Court does not weigh the evidence but must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir.2002). The goal is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This is especially important in civil rights and employment cases. A district court weighing a motion to dismiss asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 563. If there is any doubt, the motion should be denied or leave to amend should be granted. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). It bears emphasis that this motion is directed to the pleadings alone and not on any factual record.

### III.   THE FIRST AMENDMENT DOES NOT PER SE INSULATE ENTERTAINMENT CORPORATIONS FROM LIABILITY FOR DISCRIMINATION ON THE BASIS OF RACE, SEX OR SEXUAL ORIENTATION.

Defendants posit that merely because a part of their business involves expressive conduct, the First Amendment permits them to discriminate in their hiring practices on the basis of race, sex or sexual orientation. On this basis, they justify their refusal to hire the Plaintiff for a writing position for a television entertainment merely because he is a white, heterosexual male. They cite no case that holds that they have this right, absent a showing that the hiring would impinge on the creative message that the expressive conduct is intended to convey. They do not indicate what message their

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

expressive conduct is intended to convey, of course, and neither does the Complaint. Nor do they indicate how the hiring of a white, heterosexual male writer would somehow interfere with that expressive conduct.  Nor can they, of course, because, on a motion to dismiss under Rule 12(b)(6), they are not permitted to bring in facts outside the complaint under attack. *See U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (stating that if a court considers matters outside the pleadings on a 12(b)(6) motion, the motion is automatically converted into a Rule 56 motion for summary judgment); *see also* FED. R. CIV. P. Rule 12(d). This is important because in every single case Defendants have cited in support of their position, the court's decision had less to do with the status of the Plaintiff—his or her race or sexual orientation— than with the fact that that status contradicted or altered the organization's expressive message. *Boy Scouts of America v. Dale* 530 U.S. 640 (2000); *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston* 515 U.S. 557 (1995); *Green v. Miss United States of America* 52 F.4th 773 (9th Cir. 2022).

Defendants produce a television show entitled "SEAL Team," a show about a Naval military unit, and they claim that merely because they produce a work of creativity, without more, they are entitled to engage in racial and sex discrimination against a white, heterosexual male.  This is somewhat ironic, of course, inasmuch as the *actual* Navy SEAL unit is between 85% and 95% white, 2% black and 100% male. https://www.britannica.com/topic/SEAL-Team-6; https://www.military.com/daily-news/2021/06/16/us-militarys-elite-commando-forces-look-expand-diversity.html#:~:text=As%20of%20March%202021%2C%20a,Blacks%20goes%20up%20to%204. And, of course, Defendants' casting reflects that fact, as out of a main cast of seventeen, fourteen members are white and only three are black. (https://www.imdb.com/title/tt6473344/)

They argue that, in the abstract, the hiring of a white, heterosexual male, would impinge on the creative process. But they do not indicate how it would do so.  Instead,

1    they have cited a couple of dozen cases that are inarguably good law, not one of which

2    supports their position or holds that merely because a company is in the business of

3    expressive conduct, it has the unfettered right to discriminate on the basis of race, sex

4    or sexual orientation, unless one of those factors *also* alters the expressive content itself.

5    They are, therefore, not applicable to the instant case.

6         Defendants indicate that they maintain a business policy of creating and

7    maintaining a diverse workplace (*Declaration of Molly Lens*, ¶¶ 3-5; Exhibits "A", "B"

8    and "C") and argue that that is, somehow, expressive conduct, protectable under the

9    First Amendment.  That is a business policy, but it is not "expressive conduct," as that

10   term is defined in the cases.

11        The case on which Defendants rely most heavily is *Green,* 52 F.4th at 773, a case

12   brought by a transgender woman against the operators of the "Miss USA" beauty

13   pageant ("Pageant").  Defendants cite it for the proposition that a pageant, as an

14   expressive enterprise, was protected under the First Amendment against liability for

15   having discriminatorily refused to allow Green to participate in the contest.  What

16   Defendants have missed, however, is that the Pageant was not held by the court to be

17   insulated from liability for discriminating merely because Green was transgender, but

18   because allowing Green to participate in the contest would have impinged on the very

19   expressive message the contest was intended to convey.  (*Id.,* at 780).  The contest was

20   a celebration of women between certain ages who were female at birth, thought, in the

21   view of the Pageant, to embody the "ideal woman."  (*Id.* at 786).  Included in that

22   definition, though, was that the chosen women were born female. (*Id.*)

23        The Pageant did not discriminate against Green on the basis of Green's *status*,

24   per se, but on the impact that status had on the message the Pageant intended to convey.

25   The court writes: "Put differently, the Pageant's message cannot be divorced from the

26   Pageant's selection and evaluation of contestants."  (*Id.,* at 780).  In explaining its

27   reasoning, the court writes: "First, Green's insistence '[t]here is no meaningful

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

9

difference between plaintiff and any of the defendant's cisgender female contestants' is precisely the *opposite* [emphasis in original] statement of the one the Pageant seeks to make.  Green's inclusion in the Pageant would undeniably alter that *message*." (*Id.*) [emphasis supplied].

The point, in the court's view, was not Green's status, per se, but that that status "would undeniably alter [the Pageant's] message". It is the message that matters, not the status of the plaintiff.  Further, citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th. Cir. 2019), the court writes: "This means that while 'antidiscrimination laws are generally constitutional, … a 'peculiar' application that required speakers to '*alter their expressive content'* was not." (*Green*, supra, at 792) [emphasis in original; see, also *Christian Legal Soc. v. Walker*, 453 F.3d 853, 863 (7th. Cir 2006) ("[T]he Supreme Court has made it clear that antidiscrimination regulations may not be applied to expressive conduct *with the purpose of either suppressing or promoting a particular viewpoint.*" [emphasis supplied].

And that is what Defendants have missed.  There is a critical difference between discrimination on status alone, and discrimination on status that alters expressive content.  Here, the Defendants discriminated against the Plaintiff on the basis of status alone and nothing in the pleadings indicates otherwise.  Indeed, nothing in the moving papers demonstrates otherwise.  Nor can it at the pleading stage.  *U.S. v. Ritchie*, supra, at 907.

Similarly, in another opinion cited by Defendants, *Boy Scouts*, 530 U.S. at 640, the court held that the Boy Scout organization could exclude an activist homosexual man because his presence would alter the group's ability to advocate its viewpoint. ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association *if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints*. (*Id.*, at 648) [emphasis supplied]. Again, the right to discriminate cannot be based on status alone.  There has

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

to be a demonstration that that status itself infringes the organization's right to advocate its own point of view; a view inconsistent with that status.

Likewise, in *Hurley*, 515 U.S. at 557, the Supreme Court held that a gay activist group ("Group") could be excluded from the St. Patrick's Day Parade in Boston because the Group sought to deliver a message the parade organizers did not wish to deliver. ("Indeed this general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.") (*Id.* at 573).  The parade organizers did not exclude the Group because its members were, presumably, gay, but because the group sought to deliver a message the parade organizers did not want to sponsor.  The point, as in all of the other cases, was not status, standing alone, but status that delivered a message the sponsor did not want to deliver in its parade.

The instant case has nothing to do with constitutionally proscribed "forced speech," but, rather, with illegal, discriminatory hiring practices, having nothing whatsoever to do with protected expressive conduct.

It bears observing that the decisions in each of these cases came after trial or motion for summary judgment in the courts below, and the development of a factual record; not, as here, at the pleading stage without any available factual record.

Finally, in *Moore v. Hadestown Broadway, LLC* 2024 WL 989843 (2024), an African American actress was appearing in a play with an entirely black cast.  The director and other executives concluded that the fact that the chorus was entirely black, sent an inadvertently racist message, so, they decided to replace some of the black chorus members with white actors.  Ms. Moore sued for racial discrimination.

The court concluded that the First Amendment protected the producers' choice because the choice of including white actors in the cast took the message from being one of a "white savior" for black people, to one of storytelling by the mixed race chorus that no longer suggested black subservience.  The court concluded that the creative

expression in which the producers were engaged and the statement, therefore, that they wanted to convey to the audience and thought was better served with a mixed race cast than one that was exclusively African American, was protected under the First Amendment as the producers' creative choice.

Again, though, as in all of the other cases, the case turned not on the status of the plaintiff, alone, but on the message the producer wanted to deliver. The point was the message, not the plaintiff's status, standing alone, as it is in the instant case.

**IV.** **DEFENDANTS SEEK TO EXPAND THE RIGHT TO DISCRIMINATE ON THE BASIS OF RACE OR SEXUAL ORIENTATION WHEN THAT STATUS IMPINGES ON AN ORGANIZATION'S EXPRESSIVE MESSAGE, TO A GENERALIZED RIGHT TO DISCRIMINATE ON THE BASIS OF STATUS ALONE.**

What the Defendants have also missed, is the difference between status and message, a difference the Supreme Court clearly recognized in *303 Creative LLC v. Elenis,* 600 U.S. 570 (2023), in which the Court held that a website designer could not be compelled to create material celebrating a same-sex wedding.  As the Court explained, there is a critical distinction between "status and message." (*Id.,* at 595 n.3). While the Supreme Court recognized the web designer's First Amendment right to refuse to express messages with which she disagreed, it recognized that she did not claim a right to refuse to serve gay and lesbian customers.  This is another critical distinction and it is why the Defendants' acts herein are not protected under the First Amendment.

There is no First Amendment right to discriminate on the basis of racial or gender status, alone. To the extent the First Amendment allows organizations to discriminate on the basis of sex or race, it is only in the narrow category in which a person's sex, race or sexual orientation impinges on the creative effort.

But the Defendants have made no such showing.  Here, the Defendants have

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

posited that simply because they are companies engaged in a creative endeavor, they have a right to discriminate even though there is no suggestion that the plaintiff's status as a white, heterosexual male in any way impinges on the message their creative enterprise intends to convey. They claim a sort of inchoate, generalized constitutional right to racially discriminate merely because of *their* status as entertainment enterprises. But that is not enough. They must show— in this situation, completely on the pleadings— that the plaintiff's status affects their message. They cannot do so, at this stage, because they cannot adduce facts or allegations contrary to those in the operant complaint. And that is another reason their motion fails.

Finally, Defendants' reliance on *McDermott v. Ampersand Publishing, LLC*, 593 F.3d 950 (9th Cir. 2010) is completely misplaced. In the first place, that case has nothing to do with discrimination on the basis of race, sex or sexual orientation. Perhaps Defendants suffer from the misapprehension that it applies here because it involves writers, but that does not help them. In fact, if anything, McDermott supports Plaintiff's position.

The case involved a dispute between a newspaper and its employees' union that developed after the newspaper's new owner (McCaw) "voiced concerns that the paper's news reporting was sometimes biased" and "took various actions to try to eliminate the bias she perceived, including issuing warning letters to reporters and conducting staff training sessions." *Id.* at 954. The court declined to issue a preliminary injunction forcing the newspaper to rehire employees it let go during that process, concluding that doing so was "bound to affect what gets published. To the extent the publisher's choice of writers *affects the expressive content* of its newspaper, the First Amendment protects that choice." *Id.* at 962. [emphasis supplied] That makes sense, given the First Amendment's focus on promoting editorial judgment, and it was the same principle that caused a Washington court to conclude that a political discrimination law violated the First Amendment when applied to a newspaper that made employment decisions based

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

on "a code of ethics [regarding political neutrality] which it designed in good faith to foster the newspaper's integrity and credibility." *Nelson v. McClatchy Newspapers, Inc.*, 131 Wash. 2d 523, 543 (1997).

That is precisely the point. The discrimination in which the publisher engaged in *McDermott* was on the basis of the impact the fired writers would have had on the message the publisher wanted to convey. They were not released because of their status, but on the basis that their forced hiring would infringe on the publisher's protected right to publish only the viewpoint it wished to, and not that of those with whom it disagreed.

But, as in all of the other cases cited by the Defendants – and all other cases that deal with this issue – it is message, not status, that makes the difference. That is not what happened in the instant case. Here, the Defendants discriminated against a man they have not shown to occupy a status that in any way impinges on the Defendants' right or ability to broadcast any message they want to. Defendants have not shown that the Plaintiff's status in any way impedes their delivery of their viewpoint. They have not even told this Court what viewpoint they wish to protect that the presence of a white, heterosexual man would alter.  This is a simple case of racial discrimination unadorned by any matter of constitutional moment. The motion must be denied.

## V.   *AMERICAN ALLIANCE FOR EQUAL RIGHTS V FEARLESS FUND MANAGEMENT, ET. AL.*, **IS INSTRUCTIVE.**

Fortunately, this matter was ruled upon last month in the only appellate decision that actually deals with this precise issue: *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024).  In that case, the defendant supplied grants on the basis of a competitive application process.  The contest was only open to "Black females who are … legal U.S. residents."  The plaintiff organization sued and, among other things, the defendants defended by claiming— as Defendants do here— that the First Amendment protected their right to discriminate on

the basis of race. The Court of Appeals disagreed in an exhaustive and comprehensive opinion.

The court writes that "…the Supreme Court has clearly held that the First Amendment does not protect the very act of discriminating on the basis of race." (*Id*. at 777.) In reversing the District Court, the Court of Appeals observed that the court below missed the critical distinction between "status and message." (*Id*. at 778). That distinction informs the instant case. These Defendants, as alleged, discriminated against the Plaintiff in hiring on the basis of his status alone and have not— and cannot, at this stage— show otherwise. Merely engaging in a creative enterprise does not give a corporation license to discriminate on the basis of status alone, rather than status as it relates to the message the enterprise wishes to convey. Merely being in an industry that engages in expressive conduct is not enough.

As the Court of Appeals observed, "If that refusal were deemed sufficiently "expressive" to warrant protection under the Free Speech Clause, then so would be *every* act of race discrimination no matter at whom it was directed." (*Id*. at 779.) [emphasis in original] The court writes:

> "To take just one particularly offensive example, surely a business owner who summarily fires all his black employees while retaining all the white ones has at the very least telegraphed his perspective on racial equality. For better or worse, the First Amendment protects the owner's right to harbor bigoted views, but it does *not* protect his mass firing. Fearless's position—that the First Amendment protects a similarly categorical race-based exclusion—risks sowing the seeds of antidiscrimination law's demise."

The dreadful irony of the Defendants' position in this regard is that at the same time as they purport to be vitally interested in promoting "equality" and "diversity," their position, if accepted, would eviscerate Title VII and § 1981 and would open the

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

door to any enterprise that engages in advocacy, such as law firms, entertainment companies, publishers, news agencies and any other organization involved in expressive or creative conduct, to discriminate against women, people of color and homosexuals. That is a monstrous suggestion, but it is the logical end to the argument Defendants are pressing here. It must not be endorsed by this Court, and the instant motion should be denied.

## VI.   THE 1981 CLAIMS DEFENDANT SEEKS TO DISMISS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff alleges that he suffered discrimination as early as June of 2019 and describes the facts and circumstances surrounding those acts of bias. Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations because the acts giving rise to the claims were "discrete acts" of discrimination and, as to such discrete acts, the statute of limitations begins to run when the act occurs.

However, that position presupposes that the Plaintiff was aware of the fact that the reason he did not get the jobs, and those of other racial groups did, was that Plaintiff is white and the decisions not to hire him were acts of discrimination. The decision to hire two black writers over him at that time could have been completely benign. Those hired could have had more credits, something he would not have known at the time. They might have had better educational backgrounds. He would not have been privy to that information. We do not know. And neither did the Plaintiff.

Moreover, the Plaintiff's superiors— those responsible for making the hiring decisions—repeatedly assured him that the reasons he was not hired had nothing to do with his race, offering a succession of excuses. There "were already too many staff writers" and no room for Plaintiff (Third Amended Complaint ("TAC") ¶ 37—stated in 2022); "that [Plaintiff] was next in line for a staff writer position" (TAC ¶ 45—stated in 2019), suggesting that there was no bias in the hiring decisions. Had Plaintiff realized he would *never* be hired because he was a white, heterosexual male, he would have

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

stopped applying.  But he was repeatedly assured he would be considered.  Until, of course, May of 2022 when he was finally informed that the new racial minority hire "checked diversity boxes that Beneker did not." TAC ¶ 55.  It was only then that Plaintiff could have known he was the victim of discrimination.

Plaintiff was affirmatively misled by the Defendants, preventing him from discovering the discriminatory policy and its effect.  This false promise of promotion concealed Defendants' discriminatory motive, precluding Plaintiff from discovering Defendants' wrongs.  That is fraudulent concealment which results in the tolling of the statute of limitations: "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1060 (9th Cir.2012).

It is for just such circumstances that the courts have fashioned the Continuing Violation Doctrine, and why it applies here.  Initially, discrimination may be hard to identify or might appear inconsequential or benign, but can, after a time, become obvious.  That is what happened here.  The law recognizes this in the Continuing Violation Doctrine.  It is why the doctrine exists.  If the Court believes the current allegations are not sufficiently clear in this regard, it should grant leave to amend the operative complaint to provide more detailed allegations.

The Ninth Circuit allows for the application of the Continuing Violation Doctrine for section 1981 claims. *Leland v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1093 (N.D. Cal. 2008).  It applies "to hostile work environment claims that collectively constitute a single unlawful employment practice." *Id.*  The doctrine does not apply to "discrete acts of discrimination and retaliation." *Id.*  But that is not what happened here.

This idea was exhaustively explained in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (which overruled the continuing violation doctrine as

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

applied to discrete acts of discrimination).  The Court identified discrete acts as "easy to identify" and as "separate actionable 'unlawful employment practice[s].'" *Id*. at 114. It distinguished claims based on discrete acts, from hostile work environment claims as "different in kind" because hostile work environment claims involve repeated conduct. *Id*. at 115.

But discrete acts that do not appear, at first blush, to have been acts of discrimination, cannot trigger the statute of limitations.  See *Id*. (The *Morgan* Court uses the term "discrete discriminatory acts" throughout the opinion, implying that the "discrete acts" must be both discrete and discriminatory.)  And though *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) held that the statute of limitations for a Title VII claim began to run before the Plaintiff was aware of a potential discriminatory motive, unlike here, there was no discriminatory policy in effect and there were no repeated assurances, as here, that the Plaintiff would be considered for further opening.  The Defendants' policy, as the source of the discriminatory conduct, was continuous and was the direct cause of the Defendants' discriminatory actions.  For those reasons, *Lukovsky* does not apply.

The same reasoning applies here.  Beneker alleges a pattern of repeated conduct that did not appear to be acts of bias, initially, and had plausibly benign explanations. The specific instances of Defendants' discriminatory conduct were not individualized, separate, discrete acts.  Beneker's allegations depict a continuous and pervasive policy of discrimination, rather than disconnected, isolated incidents.  And though *Morgan* described a refusal to hire and a failure to promote as discrete acts, in that case, those discrete acts were separable, and not connected by company policy.  In that case, unlike here, the Defendant did not attempt to cover up its wrongful act.  The incidents alleged in the TAC are connected by Defendants' policy, therefore they cannot be viewed as isolated events, but, rather, a continuum of discriminatory acts.

Furthermore, Beneker still works for CBS. Defendants' refusal to promote

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Beneker did not result in his unemployment.  The consequences of Defendants' policy remain; Beneker has still not received his promised promotion.  He has been repeatedly denied promotion because of Defendants' policy, which now appears secretly to have been in effect at all relevant times to the claims in his complaint.

The actions, as alleged, were motivated by Defendants' discriminatory policy (TAC ¶ 13-21) and occurred as a pattern, over a period of time.  It is true that in 2019, Beneker was told that a writer was hired ahead of him because he was black.  (TAC ¶ 41).  But that preference did not appear to have been an act of discrimination against Plaintiff, but, rather, an act of favoritism for the person who was hired.  And, of course, Plaintiff was encouraged to continue applying, was assured that the next position available would be his (TAC ¶ 45) and that there were other reasons he was not hired (TAC ¶ 37 ("there was no room")).  It was not until 2022 when Beneker realized he was not being considered because he "did not check any diversity boxes."  (TAC ¶ 59.)

Taken together, the complaint articulates a pattern of conduct which cannot be understood in a vacuum.  Thus, the Defendants' policy and repeated discriminatory actions must be viewed as a pattern and a continuum, rather than as a series of discrete acts.

Beneker alleges that Defendants' discriminatory policy, in effect over several years, constitutes a continuing violation.  Given the continuous and repeated nature of Defendants' conduct, the portions of the TAC falling outside of the statute of limitations ought to be actionable under the Continuing Violation Doctrine.

## VII.  CONCLUSION

We end where we began.  The defendants have argued that merely because they are in the entertainment industry and part of their business is engaging in expressive conduct, they have the unfettered right, under the First Amendment, to discriminate in their hiring practices on the basis of race, sex and sexual orientation.  They have cited a plethora of cases, not one of which supports their position. The clear law is that a

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

company that is engaged in expressive conduct may discriminate on the basis of race, sex or sexual orientation *if* – but only if – the status of the prospective employee interferes with the expressive conduct itself and the message the employer, by its expressive conduct, wishes to convey.

Defendants have not shown how the hiring of a white, heterosexual male in any way interferes with their message. They have not even told us what their message actually is. So, it is impossible to know how that hiring could possibly interfere with it. They have only shown that they have a business *practice*, as opposed to a message, of hiring a diverse workforce. But that business *practice* is not expressive conduct. And if it were, any employer could make that claim and discriminate against anyone who is a member of a suspect classification and Title VII and 1981 would be eviscerated and complete dead letters. That is why this motion must be denied.

Finally, Defendants' acts of discrimination were covered up by the defendants with repeated assurances that the plaintiff would be considered for the next opening available, so Plaintiff did not know that the reason he was not being given the job for which he applied, was an act of discrimination and, therefore, the Continuing Violation Doctrine applies and the entire continuum of wrongs is actionable and not barred by the statute of limitation.

Defendants' motion to dismiss is not well taken and must be denied.

DATED: July 15, 2024

**JW HOWARD │ ATTORNEYS, LTD.**
**AMERICA FIRST LEGAL FOUNDATION**


By:      */s/ John W. Howard*

John W. Howard
Scott J. Street
Attorneys for Plaintiff,
BRIAN BENEKER

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

## <u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On May 13, 2024, I electronically filed **PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 15, 2024, at San Diego, California.


*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

PLAINTIFF BRIAN BENEKER'S OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS