JOHN W. HOWARD (SBN 80200)
SCOTT J. STREET (SBN 258962)
**JW Howard | Attorneys, Ltd.**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel: 619-234-2842; Fax 619-234-1716
Email: Johnh@jwhowardattorneys.com
         Sstreet@jwhowardattorneys.com

NICHOLAS R. BARRY (TN Bar No. 031963)
(*pro hac vice* forthcoming)
IAN PRIOR (MA Bar No. 655704)
(*pro hac vice* forthcoming)
**America First Legal Foundation**
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Email: nicholas.barry@aflegal.org
         ian.prior@aflegal.org

Attorneys for Plaintiff, Brian Beneker

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BENEKER,<br><br>　　　　Plaintiff<br><br>v.<br><br>CBS STUDIOS, INC., a Delaware Corporation, CBS ENTERTAINMENT GROUP, LLC, a California limited liability company, and PARAMOUNT GLOBAL, a Delaware Corporation, | Case No.: 2:24-cv-01659-JFW-SSC<br><br>**[*PROPOSED*] STATEMENT OF DECISION ON DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date: August 19, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walters<br>Courtroom: 7A<br><br>Third Amended Complaint filed: June 10, 2024 |

1
STATEMENT OF DECISION
Case No.: 2:24-cv-01659-JFW-SSC

# [PROPOSED] STATEMENT OF DECISION

Plaintiff filed his initial complaint on February 29, 2024. After a number of conferences among counsel, the complaint was amended several times so that the operative complaint is now Plaintiff's Third Amended Complaint ("TAC"), filed on June 10, 2024. (Dkt. 45).

Defendants CBS Studios, Inc. and Paramount Global (referred to herein in the collective as "CBS") filed a Motion to Dismiss on June 24, 2024. (Dkt. 48). Plaintiff filed opposition on July 15, 2024, (Dkt. 50), and Defendants a Reply on July 29, 2024. (Dkt. 54). The Court, having read and considered the pleadings and papers submitted by all parties, and having heard and considered the arguments of counsel, hereby DENIES the Motion.

## I. FACTUAL BACKGROUND

Plaintiff is a white, heterosexual male who was employed as script coordinator for the television program *SEAL Team*. TAC ¶¶ 3, 23. He also submitted, on a freelance basis, several scripts for the program that were accepted and produced by *SEAL Team* producers. *Id*. ¶¶ 24, 42, 47, 49, 64.

Plaintiff alleges that over a period of years, he applied for a permanent position as a writer for the show and was assured that he would be the next hire. *Id*. ¶ 45. However, he also alleges that despite these assurances, less qualified writers were hired over him who were black, homosexual or female and that CBS discriminated against him in the hiring process on the basis of his race, his sexual orientation and his sex. *Id*. ¶¶ 2, 40, 47, 51, 52, 53. He sues, therefore, under Title VII and 1981 for discrimination on this basis. *Id*. ¶¶ 4, 5.

CBS asserts that its hiring decisions are driven by a conscious decision to hire more "people of color", women and homosexuals as part of an employment program to promote "underserved communities" and makes its workforce more "diverse and

inclusive". Defendants' Reply in Further Support of Motion To Dismiss TAC ("Reply") at page 7, lines 16-22. CBS claims that this business program is "expressive conduct" and that it has a goal of telling "stories focused on or related to underrepresented groups and issues". *Id.* at 5, lines 21-22. However, the cast of SEAL Team is primarily white and male, reflecting the reality of those who populate the SEAL teams in reality. Amended Opposition to Defendants' Motion to Dismiss ("Opp.") at page 8, lines 18-24.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Court does not weigh the evidence but must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002). The goal is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A district court weighing a motion to dismiss asks "not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 563. If there is any doubt, the motion should be denied or leave to amend should be granted. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The instant motion is directed to the pleadings alone and not on any factual record.

### III. DISCUSSION

CBS moves to dismiss the Third Amended Complaint in its entirety on the basis that because it is in a business that engages in "expressive conduct", the First Amendment protects all hiring choices that are related in any way to the creative content of their show.[1] It also moves to dismiss two of Plaintiff's Section 1981 claims on the basis that they are not timely.

The Court disagrees.

### A. THE FIRST AMENDMENT DOES NOT PER SE INSULATE ENTERTAINMENT CORPORATIONS FROM LIABILITY FOR DISCRIMINATION ON THE BASIS OF RACE, SEX OR SEXUAL ORIENTATION.

Defendants posit that because a part of their business involves expressive conduct, the First Amendment permits them to discriminate in their hiring practices on the basis of race, sex or sexual orientation. MTD at 10, lines 5-6. On this basis, they justify their refusal to hire the Plaintiff for a writing position for a television entertainment because he is a white, heterosexual male. Reply at page 7, lines 16-24. CBS does not indicate what message its expressive conduct is intended to convey. Nor does CBS indicate how the hiring of a white, heterosexual male writer would interfere with that expressive conduct. CBS cites a variety of cases that inarguably hold that

---

[1] Recently, on July 24, 2024, a sister court within this jurisdiction issued a decision analogous to the matter presently before this Court. See, Docket No. 33, *Carano v. Disney*, Case No. 2:24-cv-01009-SPG-SK, (C.D. Cal. Jan. 1, 2024) (holding that the First Amendment does not warrant dismissal of an employment discrimination action at the pleading stage).

when an affiliation decision impinges on the message an entity wishes to convey, the entity can, without violence to equal protection and civil rights legislation, refrain from allowing certain people to participate in the entity's program or hiring applicants whose status would have that effect. *Boy Scouts of America v. Dale* 530 U.S. 640 (2000); *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston* 515 U.S. 557 (1995); *Green v. Miss United States of America* 52 F.4th 773 (9th Cir. 2022).

However, these cases, and other with the same result, do not support CBS' position, inasmuch as the decisions in those cases were not made on the basis of status alone, i.e., the race, sex or sexual orientation of the plaintiffs, but, rather, that the status of the plaintiffs contradicted or altered the organization's intended expressive message. *Boy Scouts of America v. Dale* 530 U.S. 640 (2000); *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston* 515 U.S. 557 (1995); *Green v. Miss United States of America* 52 F.4th 773 (9th Cir. 2022).

Defendants produce a television show entitled "SEAL Team," a show about a Naval military unit, and they claim that merely because they produce a work of creativity, without more, they are entitled to engage in racial and sex discrimination against a white, heterosexual male. The *actual* Navy SEAL unit is between 85% and 95% white, 2% black and 100% male. https://www.britannica.com/topic/SEAL-Team-6; https://www.military.com/daily-news/2021/06/16/us-militarys-elite-commando-forces-look-expand diversity.html#:~:text=As%20of%20March%202021%2C%20a,Blacks%20goes%20up%20to%204. Opp. at page 8, lines 18-24. Defendants' casting reflects that fact, as out of a main cast of seventeen, fourteen members are white and only three are black, and the majority, male. (https://www.imdb.com/title/tt6473344/). *Id.*

CBS argues, in the abstract, that the hiring of a white, heterosexual male, would impinge on the creative process. MTD at page 12, lines 9-10. But it does not indicate

how it would do so and neither does the Third Amended Complaint. Instead, CBS has cited a number of cases none of which holds that merely because a company is in the business of expressive conduct, it has the unfettered right to discriminate on the basis of race, sex or sexual orientation, unless one of those factors *also* alters the expressive content itself. They are, therefore, not applicable in the instant case.

Defendants indicate that they maintain a business policy of creating and maintaining a diverse workplace (*Declaration of Molly Lens*, ¶¶ 3-5; Exhibits "A", "B" and "C") and argue that that is expressive conduct, protectable under the First Amendment. But a business policy is not "expressive conduct," as that term is defined in the cases.

The case on which Defendants rely most heavily is *Green*, 52 F.4th at 773, a case brought by a transgender woman against the operators of the "Miss USA" beauty pageant ("Pageant"). Defendants cite it for the proposition that a pageant, as an expressive enterprise, was protected under the First Amendment against liability for having discriminatorily refused to allow Green to participate in the contest. However, the Pageant was not held by the court to be insulated from liability for discriminating against Green merely because Green was transgender, but because allowing Green to participate in the contest would have impinged on the very expressive message the contest was intended to convey. (*Id.*, at 780). The contest was a celebration of women between certain ages who were female at birth, thought, in the view of the Pageant, to embody the "ideal woman." (*Id.* at 786). Included in that definition, though, was that the chosen women were born female. (*Id.*)

The Pageant did not discriminate against Green on the basis of Green's *status*, per se, but on the impact that status had on the message the Pageant intended to convey. The court writes: "Put differently, the Pageant's message cannot be divorced from the Pageant's selection and evaluation of contestants." (*Id.*, at 780). In explaining its

reasoning, the court writes: "First, Green's insistence '[t]here is no meaningful difference between plaintiff and any of the defendant's cisgender female contestants' is precisely the *opposite* [emphasis in original] statement of the one the Pageant seeks to make. Green's inclusion in the Pageant would undeniably alter that *message*." (*Id.*) [emphasis supplied].

The point, in the court's view, was not Green's status, per se, but that that status "would undeniably alter [the Pageant's] message". It is the message that mattered, not the status of the plaintiff. Further, citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th. Cir. 2019), the court wrote: "This means that while 'antidiscrimination laws are generally constitutional, … a 'peculiar' application that required speakers to 'alter their expressive content' was not." (*Green*, supra, at 792) [emphasis in original; see, also *Christian Legal Soc. v. Walker*, 453 F.3d 853, 863 (7th. Cir 2006) ("[T]he Supreme Court has made it clear that antidiscrimination regulations may not be applied to expressive conduct *with the purpose of either suppressing or promoting a particular viewpoint*." [emphasis supplied].

There is a critical difference between discrimination on status alone, and discrimination on status that alters expressive content. Here, Plaintiff alleges that the Defendants discriminated against him on the basis of status alone and nothing in the pleadings indicates otherwise. TAC ¶¶ 5, 59, 67. Indeed, nothing in the moving papers demonstrates otherwise. Nor can it at the pleading stage. *U.S. v. Ritchie*, supra, at 907. Inasmuch as the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), it cannot, at this stage, conclude that the Plaintiff has failed to state a cause of action or that the claims he asserts are barred by the First Amendment, especially because the court must "…draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Cir.2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002).

Similarly, in another opinion cited by Defendants, *Boy Scouts*, 530 U.S. at 640, the Court held that the Boy Scout organization could exclude an activist homosexual man because his presence would alter the group's ability to advocate its viewpoint. ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association *if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints*. (*Id.*, at 648) [emphasis supplied]. Again, the right to discriminate cannot be based on status alone, as Plaintiff has alleged occurred here. There has to be a demonstration that that status itself infringes the organization's right to advocate its own point of view; a view inconsistent with that status, both of which are absent, at this stage.

Likewise, in *Hurley*, 515 U.S. at 557, the Supreme Court held that a gay activist group ("Group") could be excluded from the St. Patrick's Day Parade in Boston because the Group sought to deliver a message the parade organizers did not wish to deliver. ("Indeed this general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.") (*Id.* at 573). The parade organizers did not exclude the Group because its members were gay, but because the group sought to deliver a message the parade organizers did not want to sponsor. The point, as in all of the other cases, was not status, standing alone, but status that delivered a message the sponsor did not want to deliver in its parade. Also, and importantly, both *Dale* and *Hurley* do not relate to employment hiring decisions.

The decisions in each of these cases came after trial or motion for summary judgment in the courts below, and the development of a factual record; not, as here, at the pleading stage without any available factual record. And especially, when "there are two alternative explanations, one advanced by defendant and the other advanced by

plaintiff, both of which are plausible, Plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). That applies here, where the Plaintiff successfully alleged that the hiring decisions were based on his status, not on his message. At a minimum, this Court would require a factual finding to determine whether Plaintiff was not considered because of his status or because Defendants found his message undesirable. Accordingly, dismissal on these grounds would be inappropriate at this stage of the litigation.

Finally, in *Moore v. Hadestown Broadway, LLC* 2024 WL 989843 (2024), an African American actress was appearing in a play with an entirely black chorus, but with white actors playing leading roles. The director and other executives concluded that the fact that the chorus was entirely black, sent an inadvertently racist message, one of white saviors for black people, so, they decided to replace some of the black chorus members with white actors. Ms. Moore sued for racial discrimination.

The court concluded that the First Amendment protected the producers' choice because the choice of including white actors in the cast took the message from being one of a "white savior" for black people, to one of storytelling by the mixed race chorus that no longer suggested black subservience. The court concluded that the creative expression in which the producers were engaged and the statement, therefore, that they wanted to convey to the audience and thought was better served with a mixed race cast than one that was exclusively African American, was protected under the First Amendment as the producers' creative choice.

Again, the case turned not on the status of the plaintiff, alone, but on the message the producer wanted to deliver. The point was the message, not the plaintiff's status, standing alone, as Plaintiff has alleged occurred in the instant case.

### B. THE FIRST AMENDMENT IS NOT SO EXPANSIVE AS TO CONFER A GENERALIZED RIGHT TO DISCRIMINATE ON THE BASIS OF STATUS ALONE.

Plaintiff has adequately alleged that he was the victim of discrimination on the basis of status, alone. TAC ¶¶ 5, 59, 67. He argues that there is a difference between status and message, a difference the Supreme Court recognized in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), in which the Court held that a website designer could not be compelled to create material celebrating a same-sex wedding. Opp. at page 10, lines 15-17. As the Court explained, there is a critical distinction between "status and message." (*Id.*, at 595 n.3). While the Supreme Court recognized the web designer's First Amendment right to refuse to express messages with which she disagreed, it recognized that she did not claim a right to refuse to serve gay and lesbian customers. This is a critical distinction, and it is why the Defendants' acts as Plaintiff has alleged herein, are not protected under the First Amendment.

There is no First Amendment right to discriminate on the basis of racial or gender status, alone. To the extent the First Amendment allows organizations to discriminate on the basis of sex or race, it is only in the narrow category in which a person's sex, race or sexual orientation impinges on the creative effort.

Defendants have made no showing, on the pleadings, that refusing to hire the plaintiff merely, as he has alleged, on the basis of his sex, race and sexual orientation, would have any adverse impact on CBS' creative effort. Here, the Defendants have posited that simply because they are companies engaged in a creative endeavor, they have a right to discriminate even though there is no suggestion that the plaintiff's status as a white, heterosexual male, standing alone, as Plaintiff has alleged, in any way alters the message Defendants' creative enterprise intends to convey.

Defendants' reliance on *McDermott v. Ampersand Publishing, LLC*, 593 F.3d 950 (9th Cir. 2010) is misplaced. That case had nothing to do with discrimination on

the basis of race, sex or sexual orientation. The case involved a dispute between a newspaper and its employees' union that developed after the newspaper's new owner (McCaw) "voiced concerns that the paper's news reporting was sometimes biased" and "took various actions to try to eliminate the bias she perceived, including issuing warning letters to reporters and conducting staff training sessions." *Id.* at 954. The court declined to issue a preliminary injunction forcing the newspaper to rehire employees it let go during that process, concluding that doing so was "bound to affect what gets published. To the extent the publisher's choice of writers *affects the expressive content* of its newspaper, the First Amendment protects that choice." *Id.* at 962. [emphasis supplied] That is consistent with the First Amendment's focus on promoting editorial judgment, and it was the same principle that caused a Washington court to conclude that a political discrimination law violated the First Amendment when applied to a newspaper that made employment decisions based on "a code of ethics [regarding political neutrality] which it designed in good faith to foster the newspaper's integrity and credibility." *Nelson v. McClatchy Newspapers, Inc.*, 131 Wash. 2d 523, 543 (1997).

The discrimination in which the publisher engaged in *McDermott* was not on the basis of the status of the plaintiff but on the basis of the impact the fired writers would have had on the message the publisher wanted to convey. They were not released because of their status, but because their forced hiring would infringe on the publisher's protected right to publish only the viewpoint it wished to, and not that of those with whom it disagreed.

Finally, a recent decision from the 11th Circuit is instructive. In *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024), the defendant supplied grants on the basis of a competitive application process. The contest was only open to "Black females who are … legal U.S. residents." The plaintiff organization sued and, among other things, the defendants defended by

claiming— as Defendants do here— that the First Amendment protected their right to discriminate on the basis of race. The 11th Circuit Court of Appeals disagreed in an exhaustive and comprehensive opinion.

The court writes that "…the Supreme Court has clearly held that the First Amendment does not protect the very act of discriminating on the basis of race." (*Id.* at 777.) In reversing the District Court, the Court of Appeals observed that the court below missed the critical distinction between "status and message." (*Id.* at 778). That distinction informs the instant case. These Defendants, as alleged, discriminated against the Plaintiff in hiring on the basis of his status alone and have not— and cannot, at this stage— show otherwise. Merely engaging in a creative enterprise does not give a corporation license to discriminate on the basis of status alone, rather than status as it relates to the message the enterprise wishes to convey. Merely being in an industry that engages in expressive conduct is not enough.

As the 11th Circuit Court of Appeals observed, "If that refusal were deemed sufficiently "expressive" to warrant protection under the Free Speech Clause, then so would be *every* act of race discrimination no matter at whom it was directed." (*Id.* at 779.) [emphasis in original] The court wrote:

> "To take just one particularly offensive example, surely a business owner who summarily fires all his black employees while retaining all the white ones has at the very least telegraphed his perspective on racial equality. For better or worse, the First Amendment protects the owner's right to harbor bigoted views, but it does *not* protect his mass firing. Fearless's position—that the First Amendment protects a similarly categorical race-based exclusion—risks sowing the seeds of antidiscrimination law's demise."

Accordingly, the Court finds that the First Amendment does not bar Plaintiff's claims, as alleged, and the motion on this basis is DENIED.

### C. THE 1981 CLAIMS DEFENDANT SEEKS TO DISMISS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiff alleges that he suffered discrimination as early as June of 2019 and describes the facts and circumstances surrounding those acts of bias. TAC ¶¶ 36-45. Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations because the acts giving rise to the claims were "discrete acts" of discrimination and, as to such discrete acts, the statute of limitations begins to run when the act occurs. MTD at page 17 lines, 16-21.

However, that position presupposes that the Plaintiff was aware of the fact that the reason he did not get the jobs, and those of other racial groups did, was that Plaintiff is white and the decisions not to hire him were acts of discrimination. The decision to hire two black writers over him at that time could have been completely benign. The Third Amended Complaint does not allege otherwise.

Plaintiff alleges that his superiors— those responsible for making the hiring decisions—assured him that the reasons he was not hired had nothing to do with his race, offering a succession of excuses. TAC ¶ 45. There "were already too many staff writers" and no room for Plaintiff (TAC ¶ 37—stated in 2022); "that [Plaintiff] was next in line for a staff writer position" (TAC ¶ 45—stated in 2019), suggesting that there was no bias in the hiring decisions. Until, of course, May of 2022 when he was finally informed that the new racial minority hire "checked diversity boxes that Beneker did not." TAC ¶ 55. Plaintiff alleges that it was only then that realized that he had been the victim of discrimination. TAC ¶ 56-59.

That concealment of discriminatory motive tolled the statute of limitations. "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060

(9th Cir.2012).

Accordingly, the Continuing Violation Doctrine applies here and rescues claims that might otherwise have triggered the statute had, as the plaintiff has alleged, he not been led to believe otherwise.

The Ninth Circuit allows for the application of the Continuing Violation Doctrine for section 1981 claims. *Lelaind v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1093 (N.D. Cal. 2008). It applies "to hostile work environment claims that collectively constitute a single unlawful employment practice." *Id*. The doctrine does not apply to "discrete acts of discrimination and retaliation." *Id*. But that is not what Plaintiff has alleged here.

As the Supreme Court explained in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (which overruled the continuing violation doctrine as applied to discrete acts of discrimination). The Court identified discrete acts as "easy to identify" and as "separate actionable 'unlawful employment practice[s].'" *Id*. at 114. It distinguished claims based on discrete acts, from hostile work environment claims as "different in kind" because hostile work environment claims involve repeated conduct. *Id*. at 115.

Otherwise discrete acts that a defendant has identified as having been motivated by other considerations cannot trigger the statute of limitations. See *Id*. (The *Morgan* Court uses the term "discrete discriminatory acts" throughout the opinion, implying that the "discrete acts" must be both discrete and discriminatory.) And though *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) held that the statute of limitations for a Title VII claim began to run before the Plaintiff was aware of a potential discriminatory motive, unlike here, there was no discriminatory policy in effect and there were no repeated assurances, as Plaintiff has alleged here, that the Plaintiff would be considered for further openings. For that reason, *Lukovsky* does not apply as a bar

at the pleading stage.

## IV. CONCLUSION

For that reason, Defendants' Motion to Dismiss all claims based on the First Amendment and those based on two allegedly discriminatory hiring decisions Defendants claim are time barred, are both DENIED.

Dated: August 1, 2024

Hon. John F. Walter
United States District Judge